NUMBER
13-05-682-CV

                                COURT OF APPEALS

                    THIRTEENTH DISTRICT OF TEXAS

                       CORPUS
 CHRISTI – EDINBURG

 

                IN RE: DAIMLERCHRYSLER SERVICES
NORTH 

                           AMERICA, L.L.C. ET AL.

 

   

                       On Petition for Writ of Mandamus

 

 

                                M E M O R A N D U M   O P I N I O N

     Before Chief Justice Valdez and Justices Rodriguez and Garza

 

                           Opinion by Chief
Justice Valdez

 

            Relators, DaimlerChrysler Services
North America, L.L.C., d/b/a Chrysler Financial Co., f/k/a Chrysler Financial
Corporation, and DaimlerChrysler Corporation, filed a petition for writ of
mandamus in which they request this Court to direct the Honorable Benjamin 








Euresti, Jr.,
judge of the 107th judicial district court of Cameron County, Texas, to vacate
his order of October 6, 2005 denying relators' motion to compel arbitration in
the underlying lawsuit, Dennis Rendon and Maria Teresa Rendon v. Chrysler
Financial Company, L.L.C., et al. (Cause Number 2003-07-003871-A).  This Court requested and received a response
from the real parties in interest, Dennis Rendon and Maria Teresa Rendon,
regarding this petition, and granted relators’ emergency motion for stay of the
underlying proceeding by order dated November 10, 2005.  

            We now conditionally grant relators’
petition for writ of mandamus, and we set aside our previous order imposing a
stay.

I.  Background

            This is a wrongful repossession and
unfair debt collection case.  In the
underlying lawsuit, the real parties in interest bring claims of assault,
intentional infliction of emotional distress, unfair debt collection practices,
and conversion against the relators and a co-defendant automobile recovery
service.  Both relators and the
co-defendant moved to compel arbitration of the real parties’ claims under the
Federal Arbitration Act (FAA), pursuant to the pertinent retail installment
contract.[1]  Judge Euresti first delayed ruling on the
motion, instead ordering the parties to mediation.  When efforts at mediation were unsuccessful,
Judge Euresti denied relators’ motion to compel arbitration.

II.  Mandamus

            Mandamus will issue only to correct
a clear abuse of discretion when there is no adequate remedy by appeal.  In re
Redondo, 47 S.W.3d 655, 658 (Tex. App.–Corpus Christi 2001, orig.
proceeding).   "A trial court abuses
its discretion when it does not follow guiding rules and principles and reaches
an arbitrary and unreasonable decision."   Id.  Mandamus
relief is available to a party who is improperly denied arbitration under an
agreement subject to the FAA.  See EZ Pawn Corp. v. Mancias, 934 S.W.2d
87, 88 (Tex.
1996). 

            A party seeking to compel
arbitration must (1) establish the existence of an arbitration agreement and
(2) show that the claims asserted fall within the scope of that agreement.  In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex.
1999) (orig. proceeding); In re C & H
News Co., 133 S.W.3d 642, 645 (Tex.
App.–Corpus Christi 2003, orig. proceeding). 
Although courts generally enforce arbitration agreements, a court may
not order arbitration in the absence of such an agreement.  See
Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994). 
The parties' agreement to arbitrate must be clear.  See
Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 835 (Tex. App.–Houston
[1st Dist.] 2002, no pet., combined appeal & orig. proceeding). 

            Relators make three arguments in
their petition for writ of mandamus:  the
trial court abused its discretion by (1) denying the motion to compel
arbitration where no objection or opposition to the motion was filed prior to
the hearing on the motion, (2) deferring its ruling on the motion to compel
arbitration and instead ordering the cause to mediation, and (3) determining
that the arbitration agreement is unenforceable.   Because it is dispositive of the entire
proceeding, we consider the third argument alone.  See Tex. R. App. P. 47.1. 

 class=Section4>

III.  Arbitration

            Real parties in interest, Dennis and
Maria Teresa Rendon, do not dispute the existence of the arbitration provision
in their retail installment contract.  However,
they make the following arguments in support of their claim that it is
unenforceable as it applies to them:  (1)
Dennis, as a nonsignatory to the contract, cannot be bound to arbitrate as per
the contract provisions; and (2) in any case, relators have waived their right
to arbitrate by substantially invoking the judicial process.

A.  Nonsignatories

            Nonsignatories may be bound to an
arbitration clause when the rules of law or equity would bind them to the
contract generally.  See In re Kellogg, Brown & Root, 166 S.W.3d 732, 741 (Tex. 2005); In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 755 (Tex. 2001). 
Whether a nonsignatory’s claim seeks a direct benefit from a contract
containing an arbitration clause turns on the substance of the claim and not
how the claim is pled.  See In re Weekley Homes, No. 04-0119,
2005 Tex. LEXIS 817, at *10, 49 Tex. Sup. J. 55 
(Oct. 28, 2004, orig. proceeding). 
Claims must be brought on the contract (and arbitrated) if liability
arises solely from the contract or must be determined by reference to it;
however, claims can be brought in tort if liability arises from general
obligations imposed by law.  See id. at *10-11.  Thus, a nonsignatory pursuing a claim “on the
contract” must pursue all its claims, both tort-based and contract-based, in
arbitration.  See id. at *12.  

            The analysis as to whether a
nonsignatory must be compelled to arbitrate, however, does not focus solely on
the nature of the claims and their source. 
We must also look to “the nonparty’s conduct during the performance of
the contract.”  See id. at *14.  The Texas
Supreme Court has held that a nonsignatory may be compelled to arbitrate if it
“deliberately seeks and obtains substantial benefits from the contract
itself.”  Id.  For example, in the In re Weekley Homes opinion, the court focused on the behavior of a
nonsignatory to a construction contract for a private home.  The original contract had been between a
private party, Vernon Forsting, and a construction company, Weekley Homes.  See id.
at *2.  Forsting’s daughter, Patricia Von
Bargen, was a nonsignatory to the contract; however, she did reside in the home
after it was constructed, directed how Weekely Homes should construct various
customized features, and demanded repairs be made to the home.  See id.
at *16.  Forsting ultimately sued
Weekely Homes for claims of negligence and breach of contract, among others;
Von Bargen also sued for personal injuries, alleging that Weekely Homes’
negligent repairs of the house it had built caused her to develop asthma.  See id.
at *4.  

            The court analyzed the behavior of
Von Bargen, and concluded:

 

 class=Section5>

As Von Bargen
and Weekley had no contract between them, estoppel alone cannot grant either a
right to sue for breach. . .  But once
Von Bargen deliberately sought substantial and direct benefits from the
contract, and Weekley agreed to comply, equity prevents her from avoiding the
arbitration clause that was part of that agreement. . . .  While Von Bargen never based her personal injury
claim on the contract, her prior exercise of other contractual rights and her
equitable entitlement to other contractual benefits prevents her from avoiding
the arbitration clause here. 
Accordingly, the trial court abused its discretion in failing to compel
arbitration.

 

 

 class=Section6>

See id. at *19-22.  

            Here, the plaintiffs themselves (now
real parties in interest) alleged that Maria Teresa purchased the vehicle for
the use and benefit of her son, Dennis, and that Dennis both drove the vehicle
and was involved in making payments on the installment contract.  Furthermore, the arbitration provision in the
contract signed by Maria Teresa, who undisputedly had her son in mind when
entering the contract, states that it applies to,

 

 class=Section7>

[a]ny
claim or dispute, whether in contract, tort or otherwise (including the
interpretation and scope of this clause and the arbitrability of any issue),
between you and us or our employees, agents, successors or assigns, which arise
out of or relate to this contract or any resulting transaction or relationship
(including any such relationship with third
parties who do not sign this contract) . . . . 

 

 class=Section8>

(Emphasis
added.)

            We conclude from this behavior that
Dennis deliberately sought and obtained the benefits of the contract itself,
particularly through his use of the contract’s subject vehicle and his making
of installment payments under the contract. 
Thus, in accordance with In re
Weekley Homes, we conclude the trial court abused its discretion in failing
to compel both Maria Teresa, as a signatory, and Dennis, as an equitably-bound
nonsignatory, to arbitrate their dispute arising out of the installment
contract with relators for the vehicle in question.  See id.
at *22; see also Grigson v. Creative
Artists Agency, L.L.C., 210 F.3d 524,527-28 (5th Cir. 2000).    

B.  Waiver

            The Rendons do not dispute that
Maria Teresa signed a contract subject to an arbitration clause, nor do they
dispute its general applicability to the suit here.  However, they do argue that relators have
waived their right to arbitration through substantially invoking the judicial
process, thereby causing prejudice to the Rendons.  

            A party seeking to compel
arbitration has the initial burden to establish the arbitration agreement's
existence and to show that the claims asserted against it fall within the arbitration
agreement's scope.  Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 








835
(Tex. App.–Houston [1st Dist.] 2002, no writ) (combined appeal and orig.
proceeding).  "If the party seeking
arbitration carries its initial burden, the burden then shifts to the party
resisting arbitration to present evidence on its defenses to the arbitration
agreement."  Id.
at 835 (citing In re Oakwood Mobile
Homes, Inc., 987 S.W.2d at 573).  One
defense is that the party seeking arbitration has waived its right to arbitration.  See
Williams Indus., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 135 (Tex. App.–Houston [1st Dist.] 2003, no
pet.).  Because public policy favors
arbitration, there is a strong presumption against finding that a party has
waived its right to arbitration, and the burden to prove waiver is thus a heavy
one.  In
re Bruce Terminix Co., 988 S.W.2d 702, 704-05 (Tex. 1998); Mancias, 934 S.W.2d at 89. 
Any doubts regarding waiver are resolved in favor of arbitration.  In re
Bruce Terminix, 988 S.W.2d at 705.  

            Whether waiver occurs depends on the
individual facts and circumstances of each case.  See
Williams Indus., 110 S.W.3d at 135.  
Waiver will be found only when (1) the party seeking arbitration has
substantially invoked the judicial process and (2) the party opposing
arbitration suffers actual prejudice as a result.  See id.
 This is a difficult burden to meet,
as courts have previously found that a party has not waived its right to
enforce an arbitration clause merely by a prolonged delay or inaction, see In re Serv. Corp. Intern., 85 S.W.3d
171, 174 (Tex. 2002), or through an attempt at settlement or participation in
mediation, see Tex. Residential Mortgage,
L.P. v. Portman, 152 S.W.3d 861, 863-64 (Tex. App.–Dallas 2005, no pet.),
or through conducting limited discovery, including the taking of
depositions.  See Williams Indus., 110 S.W.3d at 140; In re Medallion, Ltd., 70 S.W.3d 284, 288 (Tex. App.–San Antonio
2002, orig. proceeding).  Indeed, almost
any purely defensive activity will not serve to “substantially invoke” the
judicial process.  See Central Nat’l Ins. Co. of Omaha v. Lerner, 856 S.W.2d 492,
494-95 (Tex. App.–Houston [1st Dist.] 1993, no writ) (per curiam) (holding that
affirmative activity that includes “some combination of filing an answer,
setting up a counterclaim, pursuing discovery and moving for continuance prior
to moving for a stay pending arbitration” may be considered substantial
activity).  Furthermore, the taking of
limited discovery will not be used to infer waiver “when only a minimal amount
[is] conducted, which may also be useful for the purpose of arbitration.”  See In
re Terminix, 988 S.W.2d at 704 (citation omitted).

            In this case, the Rendons filed
their lawsuit on July 30, 2003.  Relators
filed their original answer on September 16, 2003, and served requests for
disclosures on the Rendons the next day. 
Subsequent discovery by the parties, if any, was modest, and the trial
court served the parties with notice of intent to dismiss the cause for want of
prosecution on January 20, 2005.  The
Rendons filed a motion to retain the case, which the trial court granted on
March 8, 2005.  Relators then filed their
motion to compel arbitration and for abatement on April 12, 2005.  The parties argued the motion before the
trial court on May 5, 2005; the trial judge instead ordered the parties to
mediation, deferred his ruling on the motion to compel arbitration pending the
outcome of mediation, and granted a motion for continuance of the trial date.  

            Attempts at mediation apparently
failed, and the trial court denied relators’ motion to compel arbitration on
October 6, 2005.  Relators then filed
their petition for writ of mandamus with this Court on November 1, 2005.  After the filing of the petition here,
relators were advised by the trial court that it would be hearing the real
parties’ request for a trial setting on November 17, 2005.  Relators filed an emergency motion for a stay
of all trial court proceedings pending the result of this mandamus.  We granted the motion and stayed all
proceedings.  

            We see through this chronology of
proceedings that relators have engaged only defensively and only to a limited
extent.  There was no active pursuit of
counterclaims or discovery after the initial filing of the suit; indeed, there
was so little activity on all sides that the trial court planned to drop the
case from its docket for want of any progress. 
Once litigation appeared to be seriously developing, relators filed
their motion for arbitration, and participated only in mediation and limited
discovery pending the judge’s decision on its motion for arbitration.  The Rendons, as opponents of arbitration, had
the burden to demonstrate evidence of prejudice and waiver.  See
Mancias, 934 S.W.2d at 90; Tex. Residential Mortgage, 152 S.W.3d at
864.  The docket sheet lists discovery
attempts made by the Rendons only, and the Rendons have failed to provide any
evidence of what this discovery entailed or of any discovery whatsoever
conducted by relators.  Furthermore,
relators ensured through their petition and emergency motion with this Court
that judicial proceedings at the trial level could not be further invoked, even
to the extent of establishing a trial date, until this arbitration issue was
resolved.  

            Therefore, we decline to find any
substantial invocation of the judicial process sufficient to prejudice the
interests of the Rendons; relators have not waived their right to arbitration
of the Rendons’ claims through their limited defensive participation in the
case thus far.  See In re Terminix, 988 S.W.2d at 704-05; Williams Indus., 110 S.W.3d at 141. 
       Having found no waiver of
relators’ right to arbitration, and noting that the Rendons have not disputed
the applicability of the arbitration clause to their claims, we conclude that
the trial court erred and abused its discretion when denying relators’ motion
to compel arbitration.  

IV.  Conclusion

            Because the trial court abused its
discretion in denying relators’ motion to compel arbitration, we lift our stay
of the trial court proceedings and conditionally grant the writ of
mandamus.  Respondent is ordered to
vacate his order of October 6, 2005.  A
writ of mandamus will only issue if respondent refuses to comply with this
Court's instructions. 

           

 

                                                                                                                        

                                                                             Rogelio
Valdez,

                                                                             Chief
Justice

 

 

Memorandum Opinion delivered and filed

this 22nd day of December, 2005.











[1]The retail installment contract includes the following
provision, in part:

 

IMPORTANT ARBITRATION DISCLOSURES.  The following Arbitration Clause
significantly affects your rights in any dispute with us.  Please read these disclosures and the
Arbitration Clause carefully before you sign this contract . . . If either of
us chooses, any dispute between us will be decided by arbitration and not in
court. . . .